UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT J.,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>        Defendant. | No. CV 18-2195-AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff[1] filed this action on March 15, 2018. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 12, 19.) On August 1, 2018, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for reconsideration of Dr. Cross' opinions.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# **PROCEDURAL BACKGROUND**

On February 28, 2013, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits. In both applications, Plaintiff alleged an onset date of April 1, 2011.[2] Administrative Record ("AR") 11. The applications were denied initially and upon reconsideration. AR 11, 83-84, 119-20. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On June 20, 2016, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 27-42. On July 20, 2016, the ALJ issued a decision denying benefits. AR 8-22. On January 30, 2018, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than

---

[2] Previously, on January 17, 2013, a different ALJ had denied applications for disability insurance benefits and supplemental security income benefits. AR 44-57.

one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## **DISCUSSION**

### A. **Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

### B. **The ALJ's Findings**

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2017. The matter was res judicata through January 17, 2013, the date of the prior ALJ decision denying benefits. AR 14.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff has the severe impairments of mild sclerosis of the right hip, minimal age-related thoracic and lumbar spurring and degeneration, and status post history of right third finger crush injury. AR 11. Plaintiff has the residual functional capacity ("RFC") to perform medium work except that he is limited to occasional kneeling, crawling and climbing of ladders, and must alternate sitting and standing for five minutes every hour. AR 18. The ALJ found that Plaintiff is able to perform his past relevant work as a companion as actually and generally performed. AR 21.

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

C. **Examining Physician**

Plaintiff contends that the ALJ erred in discounting the opinion of two of the examining physicians, Dr. Siekerkotte and Dr. Cross.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation and emphasis omitted). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Siekerkotte (physical)

The ALJ found that Plaintiff was capable of medium work except that he was limited to occasional kneeling, crawling and climbing of ladders, and had to alternate sitting and standing for five minutes every hour. AR 18. The ALJ gave significant probative weight to the opinions of examining orthopaedic surgeon Dr. Gurvey and the findings of treating physician Dr. Arndt. AR 19-20. The ALJ gave little probative weight to the opinions of examining physician Dr. Siekerkotte because her opinions were inconsistent with her physical examination findings and with the limitations assessed by Dr. Gurvey and state agency physician Dr. Tella. AR 20.

Plaintiff underwent an orthopaedic consultation by Dr. Gurvey, a board certified orthopaedic surgeon, on July 11, 2013 (AR 337-43) and an internal medicine evaluation by Dr. Siekerkotte on February 2, 2014 (AR 401-05).

Dr. Gurvey noted that Plaintiff was observed outside of the formal examination setting. Plaintiff sat comfortably and could get on and off the examination table without difficulty. Although he appeared in an electric wheelchair borrowed from his neighbor, Plaintiff stated that he uses it only occasionally when he is out because prolonged walking causes too much pain. It was not prescribed by a doctor. AR 337, 340. Plaintiff reported having low back pain since the 1980s without treatment for the past 30 years. He sits without pain but can walk only one block before having to stop due to pain. Plaintiff also reported a crush injury on the right third finger two or three years ago. He has no pain and good function, but has some difficulty with grip with that hand. AR 338. Plaintiff did not appear to be in acute or chronic distress. AR 339.

On examination, Dr. Gurvey noted Plaintiff had normal posture but an antalgic gait on the right. He could heel and toe walk without difficulty and did not require a handheld device. The cervical spine, as well as upper and lower extremities, were within normal limits and had full range of motion. Plaintiff's right hip was tender over the greater trochanter, but not over the buttock or groin. He had pain with all movements of the right hip, but had full range of motion. Plaintiff felt low back pain in the thoracolumbar spine at 90° flexion, but there was not muscle spasm or tenderness to palpation. Straight leg raise was negative. AR 340. The right third finger did not have full flexion but he had good pinch. Foot and hand examination was otherwise normal. Motor strength was 5/5. Grip strength was 5 pounds in the right hand and 50-65 pounds on the left hand. The right hip x-ray showed mild decrease in the superior joint with mild sclerosis of the acetabulum. The lumbar spine x-ray was within normal limits for Plaintiff's age and showed minimal spurring, no evidence of malalignment and well preserved intervertebral disc spaces. AR 341-42.

Dr. Gurvey opined that Plaintiff was capable of medium work, could sit without restrictions, could stand/walk up to 6 hours in a normal 8-hour workday, and should be able to alternate between standing, walking and sitting for 5-10 minutes every hour if the right hip bothers him. Plaintiff is limited to occasional kneeling, crawling and climbing of ladders, ropes and scaffolds. AR 342.

On July 30, 2013, Plaintiff reported to Dr. Arndt that his right hip had started hurting 1½ months earlier and he could no longer ride a bicycle. He was going to try to get SSI and was 100% disabled. He had numbness in arms and feet that came and went. He reported being able to see distance without glasses. AR 351. On examination, Dr. Arndt noted that Plaintiff's gait and posture were normal. He had an upbeat mood and good insight, and his recent and remote memory were within normal limits. Dr. Arndt ordered an MRI and x-rays. AR 352. On November 6, 2013, Plaintiff reported hurting his left shoulder one month earlier. It hurt to lift, and his third and fourth digits felt numb. He had right femur pain at night, which went away during the day. AR 348. On examination, Dr. Arndt noted pain on palpation of the right thigh muscle and a positive Hawkins sign of the left shoulder, although Plaintiff was able to abduct past 100°. AR 349.

Dr. Siekerkotte had Dr. Gurvey's report when she examined Plaintiff on February 2, 2014. AR 401. Plaintiff complained of constant pain in his mid to lower back, nerve damage in his legs, and neck pain on and off. Plaintiff stated he was told he had spinal arthritis and could not lift items like before. Plaintiff stated he had blurry vision and needed glasses. Plaintiff reported a stroke two years earlier that resulted in memory problems. He arrived with a cane he got from someone else. AR 401. He could sweep, vacuum, mop, do dishes, shop and warm up food. He smokes a pack of cigarettes and drinks one to two quarts of alcohol per day. AR 402.

Dr. Siekerkotte diagnosed back, leg, shoulder and neck pain; vision problems and status post CVA with memory problems. AR 404. On examination, Plaintiff appeared in no acute distress. His vision was 20/70 with the left eye and 20/100 with the right eye.

6

He walked with a slight limp and used a cane. He had difficulty standing on toes, heels or one foot alone. His physical examination was within normal limits except that his hips were painful during range of motion testing, his lower back was tender, and his straight leg raise was positive bilaterally in the seated position and positive on the right in a supine position. AR 402-04. Right hand grip strength was 4-4+/5 on the right and otherwise 5/5. AR 404. His left shoulder x-ray should no abnormality. AR 406.

Dr. Siekerkotte opined that Plaintiff was capable of light work based on his balance problems and decreased muscular strength in the right arm. He had no sitting restrictions and could stand/walk up to six hours. Plaintiff should use a cane for longer distances because of his balance problems during the examination. He could frequently kneel, crouch and crawl, and occasionally climb, balance and stoop. He could frequently handle on the right, and he had limited ability to work around heavy machinery due to his balance problems, straight leg positive tests and decreased strength of the right arm. AR 404.

Any error in discounting Dr. Siekerkotte's opinion that Plaintiff was limited to light work would be harmless. The ALJ found that Plaintiff was capable of performing his past relevant work as a companion, a job which the vocational expert testified is classified as light work. AR 21, 39. The ALJ further limited Plaintiff to occasional kneeling, crawling and climbing of ladders, and found he must alternate sitting and standing for five minutes every hour. AR 18. Because the ALJ's residual functional capacity was more restrictive, any error in discounting Dr. Siekerkotte's opinion that Plaintiff was capable of frequent kneeling, crouching and crawling would be harmless. Because both the ALJ and Dr. Siekerkotte limited Plaintiff to occasional climbing, any error would be harmless. Plaintiff has not shown that Dr. Siekerkotte's additional limitations – limited ability to work around heavy machinery, and occasional balance and stooping – would be inconsistent with the job of companion. A companion "[c]ares for elderly, handicapped, or convalescent persons: Attends to employer's personal needs [Personal Attendant (domestic ser.)]. Transacts social or business affairs [Social

Secretary (clerical)]. Reads aloud, plays cards, or other games to entertain employer. Accompanies employer on trips and outings. May prepare and serve meals to employer." DOT 309.677-010. Nothing in this description involves heavy machinery, more than occasional balancing or stooping, and more than frequent handling. *See, e.g., Missy D. v. Berryhill*, 2018 U.S. Dist. LEXIS 182676, *3-*4, *22 (C.D. Cal. Oct. 24, 2018) (claimant limited to occasional postural activities and no climbing could perform job as companion); *Faller v. Berryhill*, 2018 U.S. Dist. LEXIS 121938, *8 (C.D. Cal. July 20, 2018) (noting job of companion, DOT 309.677-010 identify climbing, balancing, stooping, kneeling, crouching and drawling as "Not Present – Activity or condition does not exist."); DOT 309.677-010, 1991 WL 672667 (requiring no more than frequent handling). Harmless error applies to social security cases.[4] *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).

Dr. Cross (mental health)

Plaintiff underwent a mental status evaluation by Dr. Cross on January 18, 2014. AR 392-98. Dr. Cross noted an extensive history of substance abuse of various drugs. Plaintiff reported that he stopped using hard drugs in 2011, stopped drinking on January 1, 2014 and continued to smoke marijuana. AR 393. Plaintiff reported that he can go out alone, maintain relationships with family and friends, focus attention, complete light household tasks when he has a place to live, make decisions, pay bills, handle cash appropriately, go to movies and use a cellphone. AR 394.

On examination, Dr. Cross noted that Plaintiff's thought processes were coherent and organized, his thought content was relevant and non-delusional, his mood was

---

[4] Plaintiff notes that the vocational expert, in responding to the ALJ's hypothetical, asked: "Sitting and standing every four hours, every hour, five minutes?" AR 40. Plaintiff interprets the vocational expert's question as a limitation to standing and walking only four hours in an eight-hour day. (JS at 19.) Plaintiff's interpretation of the exchange is untenable. The ALJ's hypothetical contained a limitation that Plaintiff "must alternate sitting and standing for about five minutes every hour." AR 40. The vocational expert initially misspoke and then corrected herself in stating "[s]itting and standing every four hours, every hour, five minutes." *Id.* The vocational expert testified that her testimony was consistent with the DOT. AR 41.

stable, his affect was appropriate, and his speech was normal. Plaintiff had cognitive difficulties in that he could recall 3/3 words immediately but none after five minutes. He could do three digits forward and two digits backwards, but could not do five digits forward. Plaintiff had problems with concentration and calculation in that he could add but not multiply. He could state the months of the year forwards but not backwards. He could count down from 100 by ones. He had no impairment to his fund of knowledge. AR 394-95. Plaintiff did not appear to have much insight into his drug addition history and problems. AR 396.

Dr. Cross diagnosed opioid dependence in remission and cognitive disorder due to medical conditions and significant drug history. Dr. Cross opined that Plaintiff was not significantly limited in his ability to understand, remember and carry out simple instructions over an 8-hour workday and 40-hour workweek without emotionally decompensating; associate day to day work activity; understand safety rules to maintain safety on the job; accept instructions from supervisors; relate to co-workers and the public in an appropriate manner; and perform work activities without special or additional supervision. He was moderately limited in his ability to do detailed and complex tasks over an 8-hour workday and 40-hour workweek without emotionally decompensating; maintain concentration and attention; maintain reasonable persistence and pace; and maintain regular attendance in the workplace. AR 396-97.

The ALJ noted that the state agency physicians opined Plaintiff had mild limitation in activities of daily living, no limitation in social functioning, moderate limitation in maintaining concentration, persistence and pace, and no episodes of decompensation. They opined that Plaintiff had moderate limitation in his ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; and complete a normal workday and workweek without interruption from psychological symptoms. AR

15. The state agency physicians opined Plaintiff could sustain simple repetitive tasks in two-hour increments. AR 97.

The ALJ did not articulate any reason for discounting Dr. Cross' limitations. The ALJ erred. *Marsh*, 792 F.3d at 1172 (finding error when ALJ gave no reasons for discounting medical source opinion). The ALJ rejected the state agency physicians' mental restrictions as inconsistent with Plaintiff's lack of mental health treatment. AR 15. Even assuming this reason was also intended to apply to Dr. Cross, it would not qualify as a specific and legitimate reason to discount Dr. Cross' opinions. Dr. Cross was aware that Plaintiff had never sought mental health treatment. AR 393. The fact that Plaintiff never sought mental health treatment does not automatically mean that he lacks any cognitive limitation.

The court cannot confidently conclude that the error was harmless. *Marsh*, 792 F.3d at 1173. The job of companion requires reasoning level 3, which means: "Apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Thus, if the ALJ accepts the limitation to simple repetitive tasks, that limitation may inconsistent with a job requiring reasoning level 3. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *see also Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). The case will be remanded for further proceedings.[5]

### D. <u>Credibility</u>

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v.*

---

[5] Plaintiff's argument that the ALJ should reconsider Dr. Arndt's opinion that was submitted in connection with Plaintiff's prior application for benefits is rejected. AR 15. Plaintiff's prior application was denied on January 17, 2013, and he did not appeal. *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985) ("The principle of res judicata applies to findings and decisions on the merits which become final as a result of a claimant's failure to seek administrative review after notice of an adverse decision."); *Id.* at 877 ("a refusal by the Secretary to reopen a previous decision is not a 'final' decision subject to judicial review").

*Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 21.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not consistent with the objective medical evidence. AR 21. Although the fact that the objective medical evidence does not support the severity of the subjective allegations cannot form the sole basis for discounting testimony, "it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). This reason is amply supported by substantial evidence. Plaintiff testified to extreme limitations in being unable to sit comfortably, unable to stand more than three minutes, and unable to lie down except in a certain position. He lies down all day and tries not to move. He cannot take care of

his personal needs. AR 38. This testimony is plainly unsupported by the medical records as discussed above and as noted by the ALJ.[6] AR 21.

The ALJ also relied on inconsistencies between Plaintiff's testimony and his statements in the medical record. AR 19. As the ALJ noted, Plaintiff testified that he hasn't used heroin since he was a teenager. AR 19, 37. By contrast, the medical records are replete with Plaintiff's statements that he was a heroin user for two decades, admitted to using heroin as recently as 2011, and had used multiple "hard drugs" such as methamphetamine, mushrooms and opiates with PCP. AR 19, 357, 393. An ALJ may rely on a claimant's inconsistent statements regarding substance abuse to discount the credibility of his subjective symptoms. *Thomas*, 278 F.3d at 959.

The ALJ also relied on Plaintiff's activities of daily living in the record. AR 21. This reason is supported by substantial evidence. The ALJ may properly rely on activities of daily living that undermine the severity of the alleged symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Plaintiff has not shown error.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for reconsideration of Dr. Cross' opinions.

DATED: January 22, 2019

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[6] Plaintiff's argument that the ALJ failed to develop the record is rejected. Plaintiff testified at the hearing that he had an MRI of the left knee on an unknown date and time, and by an unknown provider. The ALJ obtained medical records from Dr. Arndt, Plaintiff's treating physician. It is unclear how the ALJ could track down the MRI. More importantly, even assuming an MRI of Plaintiff's left knee showed a golf-ball-sized cyst and torn ligaments at one time, the ALJ's credibility finding would remain valid.